**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elissa Levine, | ) No. CV 08-1458-PHX-MHM |
| | ) |
| Plaintiff, | ) **ORDER** |
| | ) |
| vs. | ) |
| | ) |
| TERROS, Inc., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

Currently before the Court is Defendant TERROS, Inc.'s Motion for Summary Judgement. (Dkt. #47). After reviewing the pleadings, and determining that oral argument is unnecessary, the Court issues the following Order.

**I.     Procedural History**

On July 08, 2008, Plaintiff Elissa Levine asserted a four-count complaint in Maricopa County Superior Court, bringing claims against Defendant TERROS, Inc. under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2611; the Arizona Employment Protection Act ("AEPA"), A.R.S. § 23-1501; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"). (Dkt. #1, ex.A). On August 07, 2008, Defendant TERROS, Inc. ("TERROS") removed the case from state court. (Dkt. #1). On June 12, 2009, Defendant filed the instant Motion for Summary Judgment, requesting that this Court grant summary

1  judgement as to all counts against it.  (Dkt. #47).  The motion was fully briefed on August

2  13, 2009.  (Dkt. #54).

3  **II.      MOTION FOR SUMMARY JUDGMENT**

4  **1.      Factual Background**

5  This case involves one claim of interference under the FMLA, four claims of

6  retaliation under AEPA, and one claim of religious discrimination under Title VII.  Plaintiff

7  alleges that Defendant terminated her employment (1) because she was attempting to exercise

8  her right under FMLA to take leave; (2) in retaliation for reporting unlawful activity to her

9  supervisors—whistleblowing; (3) in retaliation for filing a workers compensation claim; and

10 (4)  because she is Jewish.  (Dkt. #1).  Unless otherwise noted, the following facts are

11 undisputed.

12 Defendant TERROS is a community-based behavioral-health agency that helps people

13 recover from substance abuse, mental illness, and other behavioral health problems.

14 (Defendants Statements of Facts, p.1, ¶1).  It is headquartered in Phoenix, AZ, and maintains

15 five clinics throughout Maricopa county.  (Id. at p.2, ¶2).  On January 31, 2007, TERROS

16 offered Plaintiff the position of Associate Director of Counseling at its East McDowell Road

17 clinic in Phoenix.  (Id. at ¶6).  Her employment, however, officially began on March 8, 2007.

18 (Id. at ¶9).  On November 11, 2007, TERROS changed Plaintiff's title to Director of

19 Outpatient Services.  (Id. at ¶10).  As Director, her responsibilities remained essentially the

20 same, but she received less direct supervision from Tiara Crouse, TERROS's Vice President

21 of Outpatient Services.  (Id. at ¶11).

22 In February, 2008, members of TERROS' executive management team began looking

23 into Plaintiff's treatment of subordinate employees.  (DSOF, p.4, ¶17).  In late February and

24 early March 2008, Defendant conducted an official investigation of Plaintiff's alleged

25 inappropriate conduct.  (Id. at ¶18).  The Parties disagree concerning the reasons for the

26 investigation.   Defendant, through affidavits and depositions, states it began looking into

27 Plaintiff because, after becoming Director, she became oppressive in her dealings with her

28 staff.  (Id. at p.3, ¶13).  Specifically, TERROs has introduced evidence that the employees

Ms. Levine supervised and Ms. Levine's supervisors found her to be condescending, inconsistent, unsupportive, and emotionally abusive. (Id. at p.3, ¶14.) TERROS cites this Court to testimony showing that five members of the McDowell Clinic left TERROS or transferred to another clinic location because of Ms. Levine's behavior. (Id. at p.3, ¶15.)

Plaintiff denies that her behavior changed after becoming director, arguing instead that TERROS launched its investigation based solely on a complaint by Michele Chinichian, an employee Plaintiff had recently disciplined. (PSOF, p.8, ¶29; See, infra, section II(1)(B)(2) (discussing the facts surrounding the incident with Ms. Chinichian). Ms. Levine has introduced evidence showing that during the course of her employment at TERROS, Plaintiff received neither a formal nor informal reprimand or write-up, and that she was never counseled or disciplined by a supervisor for improper conduct. (Dkt. #51, ex. 2, 27–28). Additionally, sometime in January, 2008, her supervisor Ms. Crouse sent Plaintiff a hand-written thank-you card praising her work at TERROS. The card begins, "I wanted to thank you for just some (you've done so many) of the really nice things you've done for me, and the McD[owell] staff," and goes on to praise Plaintiff for "working w[ith] your staff to accommodate time off requests," "the gifts you gave to all your McDo[well] staff at Christmas," "being available to your staff on the days when your shoulder is acting up," "encouraging staff to do their best," and "showing fairness and leadership on a daily basis." Finally, the letter concludes, "[y]ou've done so much in the short time you've been here." (Dkt. #51, ex. 4).

On March 11, 2008 Robert Bodine, TERROS's Human Resources Director, and Ms. Crouse met with Ms. Levine to "discuss allegations of misconduct involving her treatment of several employees." (PSOF, p.6, ¶3). That same day, Mr. Bodine and Ms. Crouse conducted interviews with three members of Plaintiff's staff. (Id.) In his deposition, Mr. Bodine described two of these three interviews as "positive." (Id.) TERROS terminated Plaintiff's employment on March 18, 2008, but did not provide her with any specific reasons for having done so. (Id., at p.9, ¶36). Defendant asserts that Plaintiff was let go because she was unable to effectively manage and supervise her staff. (Id., at p.10, ¶37).

## A. Facts Relevant to Plaintiff's FMLA Claim

On or about February 05, 2008, Plaintiff informed Yelitza Silva, TERROS's Human Resources Benefits Coordinator, that she wished to take leave under FMLA to care for her sick mother. (DSOF, p.4, ¶21). On that same day, Ms. Silva sent Plaintiff a letter explaining how to apply for leave. (Id. at ¶22). Specifically, the letter informed Plaintiff that she needed to complete a Leave of Absence Request, and that within fifteen days of submitting the request, she needed to provide a Certification of Health Care Provider; a letter from the doctor treating Plaintiff's mother that confirmed the illnesses necessitating the leave. (PSOF, ex.5). On March 8, 2008, the one year anniversary of her employment with TERROS, Plaintiff submitted a Leave of Absence Request to Ms. Silva. (DSOF, p.5, ¶25). At the time of her termination, March 18, 2008, Plaintiff had yet to submit the required Certification, and, as a result, TERROS had not yet fully processed her claim. (Id. at ¶26). In her deposition, however, Plaintiff stated that she was in the process of completing the Certification, as she had sent it to her mother's doctor and was awaiting its return. (Id. at ex. H, p.7). Additionally, on the day she was fired, and prior to learning of her termination, Plaintiff emailed Ms. Silva, informing her that she had "a few questions" concerning FMLA. (PSOF, ex.8).

## B. Facts Relevant to Plaintiff's AEPA Retaliation Claim for Whistleblowing.

### 1. Ms. Chinichian's Billing Practices

On December 21, 2007, Plaintiff notified John Greenawalt via email that she wished to withhold Michele Chinichian's bonus for November and December because she engaged in "less than desirable billing practices." (PSOF, ex.10). After speaking with Plaintiff about the email, Mr. Greenawalt concluded that the billing practices Plaintiff believed Ms. Chinichian engaged in "may be both unethical and illegal," and informed upper management. (Id.). Plaintiff ultimately elected to withhold the bonus. (DSOF, p.7, ¶16). On January 14, 2008, Mr. Bodine, Ms. Chinichian, and Plaintiff met to discuss the incident. In a follow-up email to Mr. Bodine, Ms. Chinichian expressed her displeasure with Plaintiff's decision to

refer the matter to HR and to withhold her bonus, stating the former was "hurtful and excessive," while the latter was "unfair." (PSOF, ex. 11). After the billing incident, TERROS characterized Ms. Levine's conduct towards Ms. Chinichian as focusing excessive and unwarranted attention on what Ms. Levine perceived as problems with Ms. Chinichian's work. (PSOF p.7, ¶43 ). Subsequently, Ms. Chinichian asked to be transferred to another clinic, and TERROS granted this request. (Id. at ¶44). The parties disagree over the reason for Ms. Chinichian's request, with TERROS stating it was because Ms. Chinichian no longer wanted to work with Ms. Levine; Ms. Levine denies this. (Id. at ¶45). In a letter written after TERROS made the transfer decision, Plaintiff stated a willingness to "comply with the organization's decisions in this matter," but expressed her concern that Ms. Chinichian did not "demonstrate[] that she fully understands where her judgement was poor" or that "she accepts responsibility for her poor decision making." (Id. at ex. 12). TERROS launched its investigation of Ms. Levine because Ms. Chinichian complained to Mr. Bodine about Ms. Levine's decision to take away her bonus. After firing Plaintiff, Defendant restored Ms. Chinichian's bonus.

## 2. Mr. Wakamori's Therapy Practices

Makoto Wakamori is a licensed therapist at the McDowell Clinic whom Plaintiff supervised during her time at TERROS. (DSOF, p. 8, ¶53). He is also a recovered substance abuser who is very open about his Christian Faith, crediting it with his recovery. (Id. at p.9, ¶54). At times, Mr. Wakamori has incorporated certain elements of Christianity into his therapy sessions. On October 2, 2008, Plaintiff emailed Ms. Crouse to express her concerns with, among other things, Mr. Wakamori's use of religion in his therapy sessions, specifically his constant reference to Jesus during group sessions, complaints from clients that his sessions are too religiously based, and other members of her staff's concerns about referring gay clients to Mr. Wakamori because of his belief that "Jesus saved him from being gay." (Dkt. #51-6, ex. 9). In an October 3, 2008 email, Ms. Crouse acknowledged that Ms. Levine's concerns regarding the "Christian based group content" were not "entirely new," that his groups are "almost exclusively fundamentalist-Christian based (his own brand)", and

that the Christian-based nature of the his sessions "needs to be addressed again." (Id.). In her deposition, Plaintiff claims that when she sent her October 2, 2008, email, she was aware that TERROS received state funding, and she believed, as a result, that Mr. Wakamori's conduct violated the Arizona Constitutions separation of church and state. (Dkt. 51, Ex.3).

### C. Facts Relevant to Plaintiff's Claim Defendant Retaliated Against Her for Filing A Worker's Compensation Claim.

In May 2007, Plaintiff suffered a workplace injury; a strained neck caused by repeatedly lifting a crate of bottled water she purchased at Costco, for the office. (PSOF, p.8, ¶47–48). As a result of this injury, Plaintiff filed a worker's compensation claim pursuant to Arizona Revised Statute 23-901, *et seq*. (Id. at ¶47). In connection with this claim, on February 25, 2008, Plaintiff claims she underwent an Independent Medical Examination (IME), and a summary of the IME was sent to Plaintiff approximately one week later. (Id. at ¶49). In her deposition, Plaintiff states that she forwarded the results of the IME to TERROS shortly after receiving it. (Dkt. 51, ex. 3, p.50). Defendant denies ever having received a copy of the IME report. (DSOF, p.8, ¶51).

### D. Facts Relevant to Plaintiff's Religious Discrimination Claim

The facts concerning Plaintiff's religious discrimination claim incorporate those set forth in Section II(1)(B)(2) of this order. Additionally, Plaintiff states that she complained to Ms. Crouse that Mr. Wakamori had hung a Jewish religious symbol, a mezuzah[1], upside down in the doorway of his office, and that this offended her. (DSOF, p.9, ¶56). Plaintiff claims that Ms. Crouse responded by informing her that TERROS is a Christian organization and instructing her not to address the situation with Mr. Wakamori. (PSOF, p.10, ¶44). The mezuzah remained in place for approximately two months after Plaintiff's complaint.

---

[1]"A mezuzah is affixed to the doorframe of Jewish homes to fulfill the mitzvah (Biblical commandment) to inscribe the words of the Shema "on the doorposts of your house" (Deuteronomy 6:9). Jewish law requires a mezuzah on every doorway in the home apart from bathrooms, and closets too small to qualify as rooms; but many families only place one in the front doorway." Wikipedia; Mezuzah, http://en.wikipedia.org/wiki/Mezuzah (last visited Feb. 13, 2009).

Additionally, Plaintiff states that at staff meetings, Mr. Bodine regularly made offensive remarks concerning other religions, such as "all Arabs [are] terrorists," and that Roger Maslichar, a human resources specialist, told her that TERROS' upper management does not like jews.  (Id., p.11, ¶48–49).

## 2. Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED.R.CIV.P. 56(c).  The moving party bears the initial burden of establishing the absence of any genuine issue of material fact; the moving party must present the basis for its summary judgment motion and identify those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001).

A material fact is one that might affect the outcome of the case under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In addition, in order to preclude summary judgment, a dispute about a material fact must also be "genuine," such that a reasonable jury could find in favor of the non-moving party.  Id.; Anheuser -Busch, Inc. v. Natural Beverage Distrib., 69 F.3d 337, 345 (9th Cir. 1995).  In determining whether the moving party has met its burden, the Court views the evidence in the light most favorable to the nonmovant.  Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995).  The Court may not make credibility determinations or weigh conflicting evidence.  Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990).  Further, the Court must draw all reasonable inferences in favor of the nonmovant.  Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion for summary judgment, then the burden shifts to the non-moving party to present specific facts that show there is a genuine issue for trial.  FED.R.CIV.P. 56(e); Matsushia Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).  The nonmovant may not rest on bare allegations or denials

in his pleading, but must set forth specific facts, by affidavit or as otherwise provided by Rule 56, demonstrating a genuine issue for trial. FED.R.CIV.P. 56(e); Anderson, 447 U.S. at 248-49. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In sum, the question on motion for summary judgment is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 447 U.S. at 521-52. A district court is not required to probe the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmovant has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id.; see Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001) (even if there is evidence in the record that creates a genuine issue of material fact, a district court may grant summary judgment if the opposing party's papers do not include or conveniently refer to that evidence). The mere existence of a scintilla of evidence supporting the nonmovant's petition is insufficient; there must be evidence from which a trier of fact could reasonably find for the non-movant. See Matsushita Elec., 475 U.S. at 586 (nonmovant's showing of "some metaphysical doubt" as to material facts insufficient).

### 3. Discussion

#### A. Plaintiff's FMLA Claim

"The FMLA provides job security to employees who must be absent from work because of their own illnesses, to care for a family members who are ill, or to care for new babies." Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1119 (9th Cir. 2001) (citing 29 U.S.C. § 2612). To that end, the act permits a qualifying employee to take up to twelve weeks of unpaid leave each year, 29 U.S.C. § 2612(a)(1), and guarantees her job will be reinstated upon returning from leave. Id. § 2614(a)(1)(A)–(B). An employee becomes FMLA eligible only after she has worked for her employer for twelve months and for at least 1,250 hours during that twelve month period. Id. § 2611(2)(A)(i)–(ii). The Parties do not dispute Plaintiff's eligibility for FMLA benefits, and the facts show that Ms. Levine

submitted her FMLA application on March 8, exactly twelve months after she began working at TERROS. Instead, in its Motion for Summary Judgement, Defendant argues that Plaintiff's claim fails as a matter of law because she never actually took FMLA leave. (Dkt. #47, p.9).

Section 2615 of the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" the Act provides. Id. § 2615(a)(1). According to Defendant, in order to prove interference, Plaintiff must show that "(1) she took FMLA-protected leave, and (2) 'her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her [employment]'" (Dkt. #47, p.9) (quoting Bachelder, 259 F.3d at 1125). Plaintiff counters that TERROS fired her while she was attempting to secure leave, and this attempt to exercise her FMLA rights is protected from interference. Under Defendant's proposed standard, Plaintiff's claim must fail, as she never actually took leave. This Court, however, is not persuaded that Defendant correctly states the law.

The first prong of Defendant's proposed test—that the Plaintiff must actually have taken leave—is not explicitly mandated by the Ninth Circuit's decision in Bachelder. The Bachelder court did not propound a general rule, instead it wrote only that "[i]n order to prevail on her claim, therefore, Bachelder need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." Id. at 1125 (emphasis added). The court's holding, then, is clearly limited to the facts before it; an employee alleging interference that had already taken FMLA leave. Accordingly, the Bachelder case did not present the Ninth Circuit with an opportunity to consider whether the "interference" language of section 2615 excludes from protection employees fired while attempting to take leave. The Court's reasoning, however, suggest it would eschew such a rigid rule.

In Bachelder, the Ninth Circuit explained:

As a general matter, then, the established understanding at the time the FMLA was enacted was that employer actions that deter employees' participation in protected activities constitute "interference" or "restraint" with the employees' exercise of their rights. Under the FMLA . . . attaching negative consequences to the exercise of protected rights surely "tends to chill" an employee's

willingness to exercise those rights: Employees are, understandably, less likely to exercise their FMLA leave rights if they can expect to be fired or otherwise disciplined for doing so.

Id. at 1124. Were this Court to apply the Defendant's proffered test it would, in essence, be giving license to employers to chill their employees' exercise of FMLA rights, as nothing would prevent an unscrupulous employer from firing an employee because she applied for or requested leave, so long as she had not yet taken it. Such a rule also appears contrary to the plain language of the statute, which not only prevents interference with the exercise of FMLA rights, but the attempted exercise as well. 29 U.S.C. § 2615(a)(1).

Therefore, consistent with the Ninth Circuit's reasoning in Bachelder and the plain language of the statute, this Court finds that attempting to take FMLA-protected leave is protected from interference under 29 U.S.C. § 2615(a)(1). Accordingly, to prevail on her claim, Plaintiff must show by a preponderance of the evidence that (1) she attempted to take FMLA-protected leave and (2) her attempt to take FMLA protected leave constituted a negative-factor in TERROS's decision to terminate her. See Bachelder, 259 F.3d at 1125.

With regards to the first element—that Plaintiff attempted to take FMLA-protected leave—the record shows that on March 8, 2008, Plaintiff submitted a Leave of Absence Request to Ms. Silva, TERROS Human Resources Benefits Coordinator. This submission, according to the letter she received from Ms. Silva on February 5, 2008, triggered a fifteen day window in which Plaintiff was required to submit a Certification of Health Care Provider ("Certification"). Defendant fired Plaintiff on March 18, 2009, five days before the deadline to submit the Certification. Still, Defendant argues that because she did not submit the Certification, Plaintiff chose not to complete the application process, and cannot, therefore, complain that TERROS interfered with her FMLA rights. In support of its Position, Defendant cites Bailey v. Southwest Gas Company, in which the Ninth Circuit affirmed a district court's granting of a corporate defendant's summary judgement motion on a FMLA-interference claim, in part, because the plaintiff failed to follow the leave application procedures required by her company. 275 F.3d 1181, 1186 (9th Cir. 2002) ("While Southwest complied with its duties and responsibilities under the FMLA, Bailey failed to

shoulder her burden."). <u>Bailey</u>, however, is distinguishable from the instant case. Because, here the termination occurred during the period of time in which Plaintiff was permitted to submit the Certification, the Court cannot at this time conclude Ms. Levine failed to shoulder her burden. Instead, it appears that TERROS cut her opportunity to submit the Certification short. <u>Id.</u> To the extent, however, that Defendant would disagree with the Court's conclusion, it demonstrates that there is a material issue of fact concerning this issue that is best resolved by a jury.[2]

The Court must now consider if there is a disputed material issue of fact concerning the second element of the test: whether Ms. Levine's attempt to exercise her FMLA rights was a negative factor in Defendant's decision to terminate her employment. Defendant claims that its decision to fire Ms. Levine was based solely on her unsatisfactory performance as manger and had nothing to do with her desire to take FMLA-leave. Plaintiff has not introduced any direct evidence supporting her claim that Defendant considered her FMLA-leave application as a negative factor, but this is not determinative, as "[s]he can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." <u>Bachender</u> 259 F.3d at 1125.

The circumstantial evidence on which Plaintiff most strongly relies is the close temporal relationship between her firing and her application for leave. Proximity of time between an attempted exercise of FMLA rights and an adverse employment action may support an inference of causation. <u>See</u> <u>Xin Liu v. Amway Corp.</u>, 347 F.3d 1125, 1137 (9th Cir. 2003) ("Finally, the proximity in time between the leave and her termination also provides supporting evidence of a causal connection."). Defendant denies a close temporal relationship exists, arguing TERROS fired Ms. Levine six weeks after she first inquired about FMLA. Plaintiff, on the other hand, contends that an inference of causation is

---

[2]The <u>Bailey</u> case is also distinguishable from the instant one because the plaintiff there "candidly admitted that the FMLA does not apply to her case. . . .concede[d] that she did not have a qualifying health condition, that she never requested FMLA leave, and that she would not have taken FMLA leave had it been offered." 275 F.3d at 1186.

warranted because TERROS terminated her approximately two weeks after she applied for leave. Both Parties' characterizations of the facts appear to have merit. In order to trigger an employer's responsibility to determine when FMLA leave is appropriate, an "employee need not expressly assert rights under FMLA or even mention the FMLA, but may only state that leave is needed." Id. at 1134. Ms. Levine informed TERROS that she intended to take leave on February 5th, 2008, approximately six weeks before TERROS fired her. On the other hand, Ms. Levine had not yet worked for one year at TERROS, and was not, as a result, technically eligible for FMLA leave until the day she submitted her leave request on March 8, 2008.

Because this Court must view the evidence in the light most favorable to the non-movant, drawing all reasonable inferences in her favor, it will evaluate Defendant's motion for summary judgement based on Plaintiff's two-week timetable, a period of time sufficiently close that a reasonable juror could infer causation based on temporal proximity. And, the evidence shows that only after Ms. Levine filed her official request for FMLA leave did TERROS, within a span of ten days, conduct interviews with members of her staff, complete its investigation, and decide to terminate her employment. While the timing of these events may be coincidence, a reasonable juror could infer from them Ms. Levine's attempt to secure FMLA leave constituted a negative factor in TERROS decision to terminate her employment. Accordingly, the Court finds that there is a disputed issue of material fact on this issue which precludes granting summary judgment and will be resolved at trial.

**B. Plaintiff's Retaliation Claims under Arizona Employment Protection Act**

In order to succeed on a claim for retaliation under the Arizona Employment Protection Act ("AEPA"), A.R.S. § 23-1501 et seq., a Plaintiff must show: (1) that he engaged in a protected activity, (2) that he suffered an adverse employment action, and (3) that there is a causal link between the two." Hernandez v. Spacelabs Medical Inc., 343 F.3d 1107, 1113 (9th Cir. 2003); see Cox v. Amerigas Propane, Inc., 211 Fed.Appx. 585, 586 (9th Cir. 2006) (upholding district court's summary judgement order on AEPA-1501(c)(ii) claim

where Plaintiff did not meet his evidentiary burden on causation). If Plaintiff provides sufficient evidence to make out a *prima facie* case of retaliation, then the burden shifts to Defendant to articulate some legitimate, non-retaliatory reasons for its actions. <u>Porter v. California Dept. of Corrections</u>, 419 F.3d 885, 894 (9 th Cir. 2005). If Defendant sets forth such a reason, then Plaintiff must show that Defendant's proffered reason is merely a pretext for the underlying retaliatory motive. <u>Id.</u>

Plaintiff contends that Defendant violated the AEPA by firing her for engaging in the protected activities of whistleblowing—reporting Mr. Wakamori's use of Christianity during his therapy sessions, Ms. Chinichian's instance of fraudulent billing, and TERROS violation of other state regulations and state law—and filing a workers compensation claim. The Parties do not disagree that Plaintiff has suffered an adverse employment action. Accordingly, the Court will treat the second element of the test for retaliation as undisputed and will evaluate the other elements of the retaliation test as needed.

### 1. Mr. Wakamori's Therapeutic Practices:

### a. Protected Activity

As a preliminary matter, this Court must determine if Ms. Levine engaged in a protected activity by reporting Mr. Wakamori's use of Christian religious ideology as part of his therapy sessions. A "whistleblower" is an employee "who exposes wrongdoing on the part of his employer and is then discharged." <u>Wagner v. City of Globe</u>, 150 Ariz. 82, 88 (1986). Under the AEPA, whistleblowing is a protected activity. A.R.S. § 23-1501(c)(ii). The AEPA defines Whistleblowing as

> The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an agency of a public body or political subdivision.

A.R.S. § 23-1501(c)(ii). As such, to prove whistleblowing, Plaintiff must establish two elements: (1) that she had a good faith, reasonable belief that TERROS, or an employee of

- 13 -

TERROS violated or was violating state law; (2) that she disclosed her belief in a reasonable manner to someone that she believed had the authority to investigate the alleged violation and take action to prevent further violations.  Id.  Importantly, Plaintiff does not need to prove that an actual violation actually occurred, merely that she believed one did.  See Murcott v. Best Western Int'l, Inc., 198 Ariz. 349, 357 (2000).

Plaintiff states that when she reported Mr. Wakamori's therapeutic use of Christianity to Tiara Crouse, she was aware that TERROS received state funding and, as a result, believed that Mr. Wakamori's conduct violated the clause of the Arizona Constitution addressing the separation of church and state.  The provision of the Arizona Constitution to which Plaintiff refers is Article 2, Section 12, which states in pertinent part:  "No public money or property shall be appropriated for or applied to any religious worship, exercise, or instruction, or to the support of any religious establishment."  ARIZ. CONST. ART.2 § 12.  Based on the plain language of the Arizona Constitution, this Court finds that Plaintiff could have reasonably believed that TERROS, based on Mr. Wakamori's conduct, violated the Arizona Constitution.

The second prong of the test asks whether Ms. Levine disclosed her belief in a reasonable manner to someone that she believed had the authority to investigate the alleged violation and take action to prevent further violations.  While this Court finds no evidence that Ms. Levine explicitly communicated her belief concerning Mr. Wakamori's therapeutic practices, it cannot find for Defendant based on this element.  Because this Court has concluded  that a reasonable juror could infer that Plaintiff reasonably believed Mr. Wakamori's conduct violated the Arizona Constitution, it cannot now say that same juror could not also determine that Ms. Levine's communication of that behavior to Ms. Crouse conveyed that belief.  Furthermore, Defendant has not introduced evidence disproving Ms. Levine's motives.  Accordingly, our hypothetical juror could, it seems, reasonably conclude that Ms. Levine's act of communicating Mr. Wakamori's behavior was an implicit communication of her belief in the illegality of Mr. Wakamori's conduct. Plaintiff, therefore, has produced enough evidence to warrant a finding that she participated in the protected

activity of whistleblowing when she reported Mr. Wakamori's use of Christianity to Ms. Crouse.

### b.    Causation

Finally, to prove a prima facie case of retaliation, Plaintiff must demonstrate a "causal link" between her whistleblowing and her subsequent termination.  Plaintiff argues that the issue of causality is not properly before this Court, as it is an issue for the jury to decide.  This is incorrect; Plaintiff must still establish causation in order to survive summary judgement.  See Knox v. United States Rental Highway Techs., Inc., 2009 WL 806625, *4 (D. Ariz., March 26, 2009) (considering causation in order deciding motion for summary judgement on AEPA claim for whistleblowing).  To prove causation, Plaintiff must show that TERROS had a "retaliatory motive [that] played a part in the employment action." Id. at *5 (citing Cohen v. Fred Meyer, Inc., 686 F.2d 793, 798 (9th Cir. 1982)).  Specifically, Ms. Levine must show that her reporting of Mr. Wakamori's conduct played a part in TERROS decision to terminate her employment.

Defendant contends that Plaintiff cannot show causation, arguing that TERROS terminated Ms. Levine solely because of her improper and unprofessional conduct towards other employees.  In her Response, Plaintiff does not specifically address the issue of causation as related to this particular whistleblowing allegation.  Instead, she points generally to evidence showing she was fired despite having recently been praised by her supervisor, never having been disciplined during her employment, and only after an investigation during which Mr. Bodine characterized two of the three interviews TERROS conducted with her co-workers as "positive".    (Dkt. #50).  In essence, Ms. Levine argues that she was a good employee, therefore her termination must have been retaliatory.

On this evidence alone, Plaintiff has not met her burden. Plaintiff has presented no direct evidence, and the circumstantial evidence on which she relies does not warrant an inference, of causation.   First, the record shows that Ms. Levine reported Mr. Wakamori's conduct on or about October 2, 2007.  Yet, the card Ms. Levine received from Ms Crouse praising her work performance was written approximately three months later, in or around

January, 2008. A reasonable juror could not infer from this evidence that TERROS was displeased or unhappy with Ms. Levine's decision to report Mr. Wakamori's conduct and may have, as a result, desired to retaliate against her. Indeed, Plaintiff has not presented evidence showing that TERROS harbored any ill will towards Ms. Levine for reporting Mr. Wakamori's conduct. Instead, the record shows that TERROS was already aware of Mr. Wakamori's penchant for using Christianity in his sessions, and had previously attempted to address the problems. (PSOF, Ex. 9). And, after learning of the most recent incidents from Ms. Levine, Ms. Crouse wrote an email to Penny Free Burke, the Executive Vice President and Chief Clinical Officer for TERROS, which she later forwarded to Ms. Levine, stating that Mr. Wakamori's conduct "needs to be addressed again" and indicating her intention to meet with Mr. Wakamori to discuss his behavior. Id. A retaliatory motive cannot be inferred from evidence showing TERROS intended to address the very problems Ms. Levine brought to their attention. And, the mere fact that two of the three employee interviews TERROS conducted as part of its investigation of Ms. Levine's job performance were "positive," does not alone warrant an inference of causation based on the reporting of Mr. Wakamori's behavior. Accordingly, this Court finds that Plaintiff has failed to raise a genuine issue of material fact concerning causation.

### 2. Ms. Chinichian's Fraudulent Billing Practice

### a. Protected Activity

Plaintiff must prove "that she had a good faith, reasonable belief that TERROS, or an employee of TERROS violated or was violating state law." Defendant argues that Plaintiff's claim fails as a matter of law because Ms. Chinichian's billing practices do not implicate a state law, but relate instead to a non-legal human resource matter. (Dkt. #47). In reporting Ms. Chinichian's conduct, however, Plaintiff states that Plaintiff described it as "inappropriate and illegal and unethical" and reasonably believed that the billing practice violated A.R.S. 13-1802's prohibition against theft. That Plaintiff may have had such a belief is supported by an email sent John Greenawalt to Barbara Garden, Tiara Crouse, and Penny Free Burke, informing them of a "potential ethics/fraud breach that [Ms. Levine] discovered

- 16 -

at the McDowell site," and noting that "if it actually has occurred . . . [it] may be both unethical and illegal." (PSOF, ex. 10). Accordingly, this Court finds that Plaintiff may reasonably have believed Ms. Chinichian violated the law and there is, as a result, a disputed issue of material fact concerning this element that must be determined by a jury.

Next, Plaintiff must prove that she disclosed her belief in a reasonable manner to someone that she believed had the authority to investigate the alleged violation and take action to prevent further violations. Plaintiff has met her evidentiary burden on this element. It is undisputed that Plaintiff reported Ms. Chinichian's conduct and the evidence, viewed in the light most favorable to the Plaintiff, plainly allows a reasonable juror to infer she made the report for the purpose of preventing further violations.

### b. Causation

To prove causation, Plaintiff must show that TERROS had a "retaliatory motive [that] played a part in the employment action." Knox, 2009 WL 806625 at *5 (citing Cohen v. Fred Meyer, Inc., 686 F.2d 793, 798 (9th Cir. 1982)). Defendant argues that there is no evidence directly linking its decision to terminate Ms. Levine with Ms. Levine's expression of her concerns regarding Ms. Chinichian's billing practices. (Dkt. #47, p.14). Plaintiff counters that an inference of causation is warranted based on temporal proximity. This Court is permitted to "infer causation based on the 'proximity in time between the protected action and the allegedly retaliatory employment decision." Ray v. Henderson, 217 F.3d 1234, 1244 (9th Cir. 2000). The temporal proximity, however, between the employer's knowledge of protected activity and an adverse employment action must be "very close." Clark County School Dist. v. Breeden, 532 U.S. 268, 274 (2001) (per curiam). "A mere coincidence in timing is not sufficient to establish a case of retaliatory discharge." See Knox v. United States Rental Highway Techs., Inc., 2009 WL 806625, *4 (D. Ariz., March 26, 2009) (quoting Kipp v. Missouri and Transp. Comm'n, 280 F.2d 893, 897 (8th Cir. 2002)). Temporal proximity alone, however, can constitute sufficient circumstantial evidence of retaliation. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065(9th Cir.2002)

("[C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity.").

Plaintiff notified TERROS about Ms. Chinichian's billing practices in or around December 21, 2007, but was fired on March 18, 2008, nearly three months later. Plaintiff, however, characterizes the relevant gap in time as forty-five days, arguing that her February 1, 2008, letter is the relevant start date. The February letter does not report another instance of potential law-breaking or specifically allege that TERROS has failed to address Ms. Chinichian's conduct. Instead, it expresses Ms. Levine's concern that Ms. Chinichian "still did not recognize that she had engaged in fraudulent billing." (PSOF, p.7, pp.18). On the one hand, because it does not identify any further illegal conduct, this letter can be viewed as separate from Ms. Levine's alleged whistle blowing. On the other, it may also reasonably be seen as Ms. Levine's continuing attempt to blow the whistle on the allegedly illegal activity she reported in December of 2007; her concern that Ms. Chinichian still did not comprehend the illegality of her actions could be viewed as implicating TERROS' response to Ms. Chinichian's conduct. As such, a reasonable juror might conclude that only forty-five days passed between Ms. Levine's latest whistle blowing activity and her termination. And, forty-five days is a short enough period of time to draw an inference of causation based on temporal proximity. See Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir.1999) ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation.").

Additionally, this Court cannot ignore the fact that Ms. Levine's decision to report Ms. Chinichian's allegedly illegal conduct set off a chain of events that ultimately resulted in Ms. Levine's termination. The record shows that TERROS decided to investigate Ms. Levine only after Ms. Chinichian complained to Robert Bodine concerning Ms. Levine's decision to take away her bonus. (PSOF, p.9, pp 32). Also, it appears that TERROS' view of Ms. Levine's employment performance shifted from positive to negative shortly after Ms. Levine reported Ms. Chinichian's billing conduct. While it is reasonable to view Plaintiff's

whistle blowing in a vacuum, separate from TERROS's investigation into how Plaintiff disciplined Ms. Chinichian for her conduct and its change in attitude concerning Plaintiff's job performance, it is equally reasonable to view these events along a single continuum such that TERROS's decision to terminate Plaintiff cannot be separated from Plaintiff's decision to report Ms. Chinichian's conduct. A reasonable juror might infer, then, that TERROS terminated Ms. Levine, at least in part, because of the strife she caused by reporting Ms. Chinichian's billing practices and her continuous effort to bring those practices to management's attention—as represented by her February letter to management—and not merely because of the manner in which Ms. Levine sought to discipline Ms. Chinichian. Such an inference could possibly support a conclusion that TERROS acted with a retaliatory motive when it fired Ms. Levine. And, this conclusion would seem to be bolstered by the fact that TERROS' changed its view of Ms. Levine's performance only after Ms. Levine reported Ms. Chinichian's alleged misconduct. Accordingly, this Court will not substitute its discretion for that of the jury in determining whether or not TERROS possessed a retaliatory motive when terminating Ms. Levine.

### c. Legitimate Non-Retaliatory Reasons and Pretext

As discussed above, if Plaintiff provides sufficient evidence to make out a *prima facie* case of retaliation, then the burden shifts to Defendant to articulate some legitimate, non-retaliatory reasons for its actions. <u>Porter v. California Dept. of Corrections</u>, 419 F.3d 885, 894 (9th Cir. 2005). If Defendant sets forth such a reason, then Plaintiff must show that Defendant's proffered reason is merely a pretext for the underlying retaliatory motive. <u>Id.</u> In its reply brief, Defendant argues for the first time that even if Plaintiff established a prima facie case of retaliation, her claim must fail because Defendant had legitimate non-retaliatory reasons for its decision to terminate Ms. Levine and because she has not produced evidence of pretext. The Court need not consider Defendant's position, however, since it was first raised in its reply brief. <u>See</u> <u>Eberle v. City of Anaheim</u>, 901 F.2d 814, 818 (9th Cir. 1990) (noting that legal arguments raised for the first time in the reply brief are deemed waived). Thus, even if the argument has merit, this Court cannot appropriately consider it, since

Plaintiffs did not have the opportunity to respond. See United States v. Romm, 455 F.3d 990, 997 (9th Cir. 2006).

### 3. Other Regulation and State Law Violations

Plaintiff's final whistleblowing claim is based on her reporting of various instances of misconduct to TERROS management. In her deposition, Ms. Levine states that she regularly reported that employees were improperly billing for time they spent in hallways or chatting amongst themselves and that she complained to TERROS management that members of her staff practiced in areas outside the scope of their license. (PSOF, p.7, ¶20–21). Assuming Plaintiff engaged in the protected activity of whistleblowing by reporting these alleged violations, she has not produced evidence that would allow a reasonable juror to find causation.

In support of this claim, Ms. Levine points to the same evidence as to her claim concerning Mr. Wakamori's therapeutic practice; her lack of a disciplinary record, the card she received from Ms. Crouse praising her workplace performance, and the two positive reviews of her performance elicited during TERROS investigation. Ms. Levine reported at least one of these incidents, Kathy Frier's alleged performance of unlicensed work, in late 2007. (PSOF, p.8, ¶23) Once again, the card praising her performance, which Ms. Levine received sometime in January, demonstrates, if anything, that TERROS did not disapprove of her reporting Ms. Frier's behavior. Additionally, she has presented no evidence suggesting that TERROS sought to cover-up, avoid dealing with, or otherwise frowned on Ms. Levine's reporting state law or regulation violations. And, the fact that two out of three persons interviewed gave positive reviews of her performance, absent other supporting evidence, is not enough to draw an inference that TERROS retaliated against Ms. Levine for reporting these specific instances of conduct. Accordingly, there is not a disputed material issue of fact as to causation.

### 4. Worker's Compensation Claim

Under the AEPA the filing of a workers' compensation claim is a protected activity. A.R.S. § 23-1501(c)(iii). The Parties do not dispute that in May 2007, Ms. Levine suffered

a workplace injury, and filed a workers compensation claim pursuant to A.R.S. 23-901, *et seq.* There is disagreement, however, concerning whether Ms. Levine ever forwarded TERROS the results of her February 25, 2009, Independent Medical Examination ("IME"). Plaintiff states that she forwarded the results of the IME approximately one week after it was completed, while Defendant denies ever having received the document. As the Parties agree that the Plaintiff engaged in a protected activity, this Court must consider causation, moving onto the issue of pretext if Plaintiff has made out a *prima facie* case.

In its Motion for Summary judgement, Defendant argues that Plaintiff has not presented any evidence whatsoever from which a jury might infer causation. In support of her claim, Plaintiff relies on temporal proximity and other evidence demonstrating that she was a good employee, including her unblemished work record, the card praising her workplace performance, and the two interviewees that gave an overall positive assessment of her performance. As to temporal proximity, Defendant contends that it is non-existent, as Plaintiff filed her worker's compensation claim in May 2007, but was not terminated until March 2008, ten months later. Plaintiff, counters that the relevant time period is less than a month, starting the clock sometime on or about late February or early March, the point at which she claims to have submitted her IME to TERROS. Yet, Plaintiff has neither produced the IME, explained its contents, nor offered any proof that she submitted it to TERROS. Defendant, on the other hand, has produced the affidavits of Mr. Bodine and Ms. Crouse, both denying that TERROS ever receive the IME.

While there appears to be a genuine issue of fact concerning whether or not TERROS received the IME, it is not material. Because Plaintiff has not produced the IME nor explained its contents, this Court cannot determine what relevance, if any, it has to this claim. Specifically, Plaintiff has not explained, what impact, if any, an IME that supported her worker's compensation claim would have had on Plaintiff's ability to recover for her injury, thereby making it impossible for this Court to determine if receiving the IME would have motivated TERROS to fire Plaintiff. Accordingly, this Court will consider the filing of the workers' compensation claim as the protected activity, and finds, as a result, that 10 months

passed between that activity and the termination of Ms. Levine. Ten month is too long a period to support an inference of causation based on temporal proximity; indeed, these events are not temporally proximate at all. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1068 (9th Cir. 2002) (finding no temporal proximity where employee was terminated ten months after she filed her complaint).

Finally, Plaintiff also argues that her unblemished work record, the card praising her workplace performance, and the two interviewees that gave an overall positive assessment of her performance. Once again, this evidence is not sufficient to survive summary judgement. Plaintiff's injury occurred two months after she began working at TERROS. Her lack of a disciplinary record and the praise she receive from Ms. Crouse supports an inference that TERROS did not hold a grudge against Ms. Levine for filing her claim. And, Plaintiff has produced no other evidence indicating TERROS fired Ms. Levine because she filed a workers' compensation claim. Accordingly, there is no material issue of fact as to causation concerning and Plaintiff's claim must fail.

## C.    Religious Discrimination Claim

Plaintiff's final claim is for religious discrimination, arguing she was unlawfully discharged because she is Jewish. Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's religion." 42 U.S.C. § 2000e-2(a)(1). "A claim for religious discrimination under Title VII can be asserted under several different theories, including disparate treatment and failure to accommodate." Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004). Plaintiff's claim is predicated on disparate treatment. (Dkt. #1, ex. A, p.7). A disparate treatment claim based on religious discrimination is analyzed under the McDonnell Douglas burden-shifting framework, and requires that Ms. Levine establish a *prima facie* case by showing that: (1) [s]he is a member of a protected class; (2) [s]he was qualified for h[er] position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside h[er] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. If Ms. Levine

establishes a presumption of discrimination, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext. See Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 659 (9th Cir. 2002); Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

Defendant does not dispute that Plaintiff is a member of a protected class or that she suffered an adverse employment action. And, evidence in the record clearly supports a finding that Plaintiff was qualified for her position, as on November 11, 2007, TERROS changed Plaintiff's title to Director of Outpatient Services. Although her responsibilities remained essentially the same, as Director she received less direct supervision from Ms. Crouse, suggesting TERROS had faith in Ms. Levine's qualification for her job.[3] It is with respect to the fourth element that the Parties disagree.

To survive summary judgement, "the amount of evidence that [Plaintiff] must produce is 'very little,' so long as it is more than "purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars." Peterson, 366 F.3d 736, 743 (9th Cir. 2004). Defendant alleges Plaintiff has produced no evidence that similarly situated individuals outside of Ms. Levine's protected class were treated more favorably than she. In support of her claim, Plaintiff points to four pieces of evidence: (1) Mr. Wakamori's use of religion in his sessions to management; (2) the events surrounding her having reported Mr. Wakamori's placement of an upside-down Mezuzah on his door, including Ms. Crouse

_____

[3]Defendant asserts, based on Peterson, that this court must determine if Plaintiff's job performance was satisfactory. 358, F.3d at 603 ("To survive summary judgment on his disparate treatment claim, Peterson must establish that his job performance was satisfactory and provide evidence, either direct or circumstantial, to support a reasonable inference that his termination was discriminatory.). This Court finds, however, that the requirement of job performance is folded into the McDonnell-Douglas test that the Court must apply, and is not a free-standing element outside of that framework. See Bodett v. CoxCom, Inc., 366 F.3d 736, 743 (9th Cir. 2004) (applying McDonnell-Douglas to disparate-treatment religious-discrimination claim without a satisfactory job performance requirement).

response that TERROS was a "Christian organization"; (3) that at regularly scheduled staff meetings Mr. Bodine made comments offensive to other religions, including Islam; and (4) Mr. Maslichar's statement to her that upper management at TERROS reportedly did not like jews. (Dkt. #50, p.13)

As a preliminary matter, the Court finds that none of the evidence demonstrates that TERROS treated similarly situated individuals of other religions differently than Ms. Levine. There is no evidence that TERROS allowed Mr. Wakamori to express or practice his religion in a manner that it denied to Ms. Levine. And, the fact Ms. Levine was offended by Mr. Wakamori's hanging of the upside-down Mezuzah does not mean she was treated differently by TERROS. And, even taking as true Plaintiff's allegations against Mr. Bodine and TERROS management, their alleged racist and anti-Semitic attitudes are not proof that TERROS treated similarly situated individuals of different religions differently than Ms. Levine Instead, this Court must consider whether that evidence and the other evidence Ms. Levine has presented in support of this claim warrants an inference of discrimination.

First, Ms. Levine, as Mr. Wakamori's supervisor, was not discriminated against by his religious therapeutic practices or his hanging of the Mezuzah on the door. At best, she was unwillingly subjected to his religion, and, as a result, an inference of discrimination is not warranted based on his conduct. Second, Ms. Levine emphasizes the fact that Ms. Crouse told her TERROS was a "Christian organization" when she complained about the Mezuzah. Assuming this allegation is true, while "comments suggesting that the employer may have considered impermissible factors are clearly relevant to a disparate treatment claim," so-called "'stray' remarks are insufficient to establish discrimination. Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1439 (9th Cir. 1990) (holding that in the context of a Title VII age-discrimination case, an employers comment that she hired an employee because he was "a bright, intelligent, knowledgeable young man" was a stray remark); see also Gagne v. Northwestern Nat'l Ins. Co., 881 F.2d 309, 314-16 (6th Cir.1989) (finding that a "single, isolated discriminatory comment" by plaintiff's immediate supervisor was insufficient to trigger burden shift or to avoid summary judgment for defendant); Smith v. Firestone Tire

and Rubber Co., 875 F.2d 1325, 1330 (7th Cir.1989) (noting that stray "remarks, ... when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements are made by the decisionmaker in issue"). Ms. Crouse's comment that TERROS is a "Christian organization" is clearly a stray remark, and is, without more, insufficient on its own to establish an inference of discrimination. As for Mr. Bodine's allegedly discriminatory comments, specifically that all "all Arabs [are] terrorists," the Court does not see their connection to this case as Ms. Levine's claim is predicated on her being Jewish. And, to the extent his comments about Arabs are relevant, they would also appear to fall into the stray remarks category. Finally, this Court cannot draw an inference of discrimination based solely upon Plaintiff's deposition testimony that Mr. Maslichar's told her TERROS upper management does not like jews. This is hearsay, and is unsupported by any other evidence in the record. Accordingly, the Court finds that Plaintiff has failed to produce evidence sufficient to establish a prima facie case of religious discrimination.

/ / /

**Accordingly,**

**IT IS HEREBY ORDERED** denying in part and granting in part Defendant's Motion for Summary Judgement. (Dkt. #47). Defendant's motion is DENIED as to Plaintiff's FMLA claim and Plaintiff's retaliation claim predicated on Plaintiff's reporting of Ms. Chinichian's alleged billing misconduct. Defendant's motion is GRANTED as to all of Plaintiff's remaining claims.

**IT IS FURTHER ORDERED** setting this matter for Status Hearing on <u>April 5, 2010 at 3:00 p.m.</u>, at which time a Final Pretrial Conference and Trial date will be set.

DATED this 4th day of March, 2010.

_____
Mary H. Murguia
United States District Judge